UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| AHSLEY EMBLETON, )<br>)<br>*Plaintiff* )<br>)<br>v. )<br>)<br>SUNMAN-DEARBORN COMMUNITY )<br>SCHOOLS, )<br>)<br>*Defendant* ) | Cause No. 4:19-cv-262-RLM-DML |

ORDER

Plaintiff Ashley Embleton sued Sunman-Dearborn Community Schools, alleging that the School violated her rights under Title VII of the Civil Rights Act by discriminating against her because she is a woman. The School has moved for summary judgment. For the following reasons, the court denies the School's motion. [Doc. No. 49].

I. Background

Since 2005, Ms. Embleton had been periodically employed by the School as a substitute teacher, most often as a day-to-day substitute or instruction aide, but also for long-term position on three separate occasions. On November 29, 2018, Ms. Embleton applied for a long-term substitute teacher position at Bright Elementary School[1] that was scheduled to start on January 7, 2019, and run through sometime in March 2019. Bright's principal, Kelly Roth, interviewed Ms.

---

[1] Bright is a part of Sunman-Dearborn Community Schools Corporation.

Embleton and the only other applicant, Zach Strub, for the position on December 13, 2018. Ms. Embleton says she took notes during her interview and memorialized Mrs. Roth expressing that she wished to hire a man for the position, and that she wanted more men in the building. Ms. Embleton followed up on these comments in writing to Mrs. Roth on December 19th, saying:

> After you told me last Thursday during my "interview" that you wanted to hire a male/have more men in the building—and that male candidate was seen Tuesday morning being shown around by Brooke, I do not think there is much to talk about.  I need to know in writing the status of the position I applied, and why I did not get the position.

Mrs. Roth denies making such comments, but she nevertheless reported Ms. Embleton's accusations to the Superintendent, Andrew Jackson, either that same day or on the next day, December 20. At the time of her application, Ms. Embleton was filling a long-term substitute teacher position at East Central Middle School[2] where Matthew Maple was principal. Mr. Strub had also taught at East Central as a student teacher while he was finishing his bachelor's degree in middle grades education, and Dr. Maple was familiar with both Ms. Embleton and Mr. Strub's teaching performances. Mrs. Roth said she contacted Dr. Maple for references, and while Dr. Maple gave a strong recommendation for Mr. Strub, he had some concerns about Ms. Embleton's ability to maintain positive relationships based on a parent-teacher meeting he facilitated with Ms. Embleton.

---

[2] East Central is a part of Sunman-Dearborn Community Schools Corporation.

Mrs. Roth ultimately recommended Mr. Strub for the position at Bright, and the School hired him over Ms. Embleton. Mrs. Roth says she chose Mr. Strub because she "thought he would be able to build positive relationships with the students and deliver the content effectively." She also had concerns about Ms. Embleton, beyond Dr. Maple's input, based on complaints that Ms. Embleton didn't follow substitute lesson plans and had conflicts with other staff members. Mrs. Roth also says she witnessed conflict between Ms. Embleton and other staff members herself.

Others had heard Mrs. Roth express preference for finding a male candidate to fill the role. After her interview, Ms. Embleton told her mother, Rebecca Lail, about Mrs. Roth's alleged comments. Mrs. Lail is also a teacher at Bright, and she testified that she attended a long-term feasibility study in October or November 2018 where someone asked what the school would ask for if it had a wish list. Mrs. Lail testified that Mrs. Roth responded "I need a man. Can you get me a man? . . . We need a man in this building. We have no men, except [the custodian]." Another teacher at Bright, Chris Vennemeier, attested to hearing the same comments from Mrs. Roth. In November 2018, Ms. Vennemeier said that Mrs. Roth asked her in passing if she would reach out to Norb Goessling—the former male principal at Bright—to see if he would be interested in the position. Ms. Vennemeier attested that Mrs. Roth remarked that she "needed men in the building."

Dr. Maple held Ms. Embleton's parent-teacher meeting on December 11, 2018, because the parent of a student in Ms. Embleton's class reached out to

Dr. Maple regarding concerns the parent had about Ms. Embleton. This was the second parent complaint that Dr. Maple had received about Ms. Embleton that semester. Dr. Maple testified that he didn't think the meeting went well because of comments that Ms. Embleton made about the student that upset the parent. Within a day or two after the meeting, Dr. Maple told Dr. Jackson and Mary Ann Baines, the Director of Financial Operations, about his concerns regarding Ms. Embleton's conduct during the meeting.

On December 20, Dr. Jackson directed Ms. Baines to remove Ms. Embleton from the list of individuals available for day-to-day substitute assignments. Dr. Jackson testified that he made this decision based on his understanding that Ms. Embleton had previously used inappropriate language in front of students and on what Dr. Maple said about the parent-teacher meeting.

Ms. Embleton brings this suit in response to the School's selection of Mr. Strub over her for the long-term substitute position and the School's removal of her from the list of individuals available for day-to-day substitute assignments. She says that the School took these actions against her because she is a woman, in violation of her civil rights. The School has moved for summary judgment.

II. STANDARD OF REVIEW

"Summary judgment . . . is proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the movant] is entitled to judgment as a matter of law." Protective

4

Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011); Fed. R. Civ. P. 56(a). The court's function at the summary judgment stage isn't "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In making that determination, the court must construe the evidence, and all inferences that can reasonably be drawn from the evidence, in the light most favorable to the non-moving party. Id. at 249, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ."). The movant bears the burden of showing that there is no genuine issue of material fact, but the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. A fact is material if affects the outcome of the case. Monroe v. Indiana Dep't of Transportation, 871 F.3d 495, 503 (7th Cir. 2017). "A factual dispute is genuine only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Alston v. City of Madison, 853 F.3d 901, 910–911 (7th Cir. 2017) (quoting Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012)).

To defeat a summary judgment motion, "the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial[,]" Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); see also Fed. R. Civ. P. 56(e)(2). Summary judgment is "not a dress rehearsal or

practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005).

### III. Discussion

Ms. Embleton asserts two discrimination claims. First, she says that the School discriminated against her when it selected Mr. Strub for the long-term substitute position because he is a man. Second, she says that the School retaliated against her for complaining about Mrs. Roth's alleged comments by removing her from the substitute teacher list.

"Title VII prohibits intentional discrimination in employment on the basis of statutorily proscribed factors, including sex." Joll v. Valparaiso Cmty. Sch., 953 F.3d 923, 929 (7th Cir. 2020); 42 U.S.C. § 2000e-2(a)(1). "[T]he sole question that matters" in a discrimination case is causation—in this case, whether Ms. Embleton's sex caused the School to choose Mr. Strub over her and take her off the substitute teacher list. Id. Courts must assess the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself" in making that determination. Ortiz v. Werner Enters., Inc., 834 F.3d 760, 765 (7th Cir. 2016).

### A. Count I: Failure-to-Hire

Many plaintiffs bringing Title VII discrimination claims choose to use the burden-shifting framework established in McDonnell Douglas Corp. v. Green to "clarify and simplify" their task of showing a genuine issue of material fact that their sex (or other proscribed factor) caused an adverse employment action. 411 U.S. 792 (1973). Ms. Embleton makes no use of that framework. "In order to make out a case of sex discrimination without resorting to McDonnell Douglas, a plaintiff must provide either direct or circumstantial evidence that supports an inference of intentional discrimination." Joll v. Valparaiso Cmty. Sch., 953 F.3d at 929.

Ms. Embleton points to four pieces of evidence to show that she was passed over for the long-term substitute position because she's a woman: (1) her notes from her interview with Mrs. Roth, (2) Mrs. Lail's deposition testimony about Mrs. Roth's comments, (3) Mrs. Lail's affidavit attesting to Mrs. Roth's comments, and (4) Ms. Vennemeier's affidavit attesting to Mrs. Roth's comments. The School says that none of this evidence shows that Mrs. Roth's actions were actually motivated by gender animus, and moreover, Mrs. Roth had a non-discriminatory reason for recommending Mr. Strub over Ms. Embleton: Dr. Maple's reference and her own observations of Ms. Embleton's teaching performance. The School then says that, at the most, this is a mixed-motive case. Even if Mrs. Roth's alleged statements could support a reasonable inference that Ms. Embleton's gender was a motivating factor in the decision not to hire her,

7

summary judgment is still appropriate because the evidence shows that the School would have still hired Mr. Strub regardless of Ms. Embleton's gender.

Whether Mrs. Roth made comments about wanting a male candidate to fill the role is a fact in dispute. A decision-maker's statement that her actions were based on a proscribed factor is direct evidence of Title VII discrimination. Hossack v. Floor Covering Assocs. of Joliet, Inc., 492 F.3d 853, 861 (7th Cir. 2007). Evidence of "suggestive comments or conduct" can support an inference of intentional discrimination. Id. (citing Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). So the factual dispute over Mrs. Roth's alleged comments is genuine and material; it could affect the outcome of the case. Monroe v. Indiana Dep't of Transportation, 871 F.3d at 503. A reasonable jury could find that the school didn't hire Ms. Embleton because of her gender if the jury believed that Mrs. Roth made the alleged comments. The School's evidence that Mrs. Roth had a non-discriminatory reason for recommending Mr. Strub over Ms. Embleton isn't enough to support a finding that no reasonable juror could find in Ms. Embleton's favor. So summary judgment isn't warranted on these grounds.

The School's mixed-motive argument doesn't warrant summary judgment either. A mixed-motive defense is an affirmative defense that the employer carries the burden of establishing. Desert Palace, Inc. v. Costa, 539 U.S. 90, 93 (2003). "A mixed motive case is one in which both legitimate and illegitimate reasons motivate an employment decision. An employer can avoid a finding of liability in such a case by proving that it would have made the same decision even if it had

8

not allowed sex to play a discriminatory role, and even though other permissible factors also motivated the decision." Hossack v. Floor Covering Assocs. of Joliet, Inc., 492 F.3d at 860.

The School again points to Dr. Maple's negative reference and Mrs. Roth's own concerns about Ms. Embleton in saying that the outcome would have been the same if Ms. Embleton were a man. But Ms. Embleton presents evidence showing that, at least in some ways, she was more qualified for the open role than Mr. Strub. Ms. Embleton had over a decade more teaching experience than Mr. Strub, specifically with schools that were part of Sunman-Dearborn Community Schools Corporation. She had been hired for three previous long-term substitute positions; Mr. Strub's experience was limited to four semesters of student teaching.[3] Mr. Strub's degree was in middle grades education; Ms. Embleton also had a bachelor's degree in elementary education and the open role was at an elementary school. Ms. Embleton's GPA was 3.8; Mr. Strub's was 3.0. And other than Dr. Maple's positive reference, Mr. Strub had no credentials to make up for the discrepancy in qualifications. Both Ms. Embleton and Mr. Strub had a valid Indiana substitute teacher permit, but neither of them had an Indiana teacher's license.

A jury would be free to credit the School's evidence that Ms. Embleton wouldn't have been hired even if she were a man, but it isn't strong enough to warrant summary judgment, especially considering Ms. Embleton's evidence in

---

[3] The record is unclear as to whether three of the four semesters were with Sunman-Dearborn schools.

9

rebuttal. See Speedy v. Rexnord Corp., 243 F.3d 397, 403 (7th Cir. 2001) ("[Defendant's] lone statement that he would have fired [plaintiff] solely for absenteeism is not sufficient objective proof for a mixed-motive defense."); Abioye v. Sundstrand Corp., 164 F.3d 364, 369 (7th Cir. 1998) ("[T]he evidence of a wholly legitimate reason for the employment decision is overwhelming."). The court must view the evidence in the light most favorable to Ms. Embleton because she is the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249, 255. Viewed in that light, a reasonable jury could find that the decision to not hire Ms. Embleton would've been different if gender animus hadn't played a role.

\* \* \*

The School isn't entitled to summary judgment on Ms. Embleton's Title VII failure-to-hire claim.

### B. Count II: Retaliation

To succeed on a Title VII retaliation claim, a plaintiff "must offer evidence of: (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." Skiba v. Illinois Cent. R.R. Co., 884 F.3d 708, 718 (7th Cir. 2018). The School argues that Ms. Embleton can't establish any of these elements.

An employee's complaint to an employer indicating that gender discrimination occurred is a protected activity. Id. (citing Tomanovich v. City of Indianapolis, 457 F.3d 656, 663 (7th Cir. 2006)); Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1147 (7th Cir. 1997) ("[A] plaintiff must show that she opposed

10

conduct prohibited by Title VII, or at a minimum that she had a 'reasonable belief' she was challenging such conduct."). The School says that Ms. Embleton's message to Mrs. Roth wasn't a protected activity but instead a refusal to talk to Mrs. Roth about the position because Ms. Embleton assumed the job had already been filled. The court disagrees. Ms. Embleton said enough to show that she believed she was subject to gender discrimination. Even Dr. Jackson seems to agree; he testified in his deposition that the alleged statements would amount to gender discrimination if they were actually made. [Jackson Dep. 14:13-20]. Ms. Embleton has satisfied the first element.

Regarding the second element, "'adverse employment action' simply means an employer's action that would dissuade a reasonable worker from participating in protected activity." Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cty., 804 F.3d 826, 833 (7th Cir. 2015). Removal from the list of available substitutes ensures that individual will no longer be considered for substitute teacher positions. That is enough to dissuade a reasonable substitute teacher at Bright from complaining about gender discrimination. Ms. Embleton has satisfied the second element.

Finally, "[t]o prove causation, the plaintiff must show that "the desire to retaliate was the but-for cause of the challenged employment action." Eaton v. J. H. Findorff & Son, Inc., 1 F.4th 508, 511–12 (7th Cir. 2021) (quoting Gracia v. SigmaTron Int'l, Inc., 842 F.3d 1010, 1019 (7th Cir. 2016)). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Id.; Khungar v. Access Cmty.

Health Network, 985 F.3d 565, 578 (7th Cir. 2021) ("The question is: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?").

"Suspicious timing is rarely enough to create a triable issue." Khungar v. Access Cmty. Health Network, 985 F.3d at 578 (quoting Casna v. City of Loves Park, 574 F.3d 420, 427 (7th Cir. 2009). "As a threshold matter, the plaintiff must show that the defendant was aware of the protected conduct. If so, a causal connection can then be demonstrated by suspicious timing alone only when the employer's action follows on the close heels of protected expression." Id. (quoting Daza v. Indiana, 941 F.3d 303, 309 (7th Cir. 2019)). "At minimum, therefore, [the plaintiff] must offer evidence that would support a reasonable inference that [the defendant] was aware of [the plaintiff's] allegations of discrimination." Id. (quoting Luckie v. Ameritech Corp., 389 F.3d 708, 716 (7th Cir. 2004).

The School first argues that there is no evidence to support that Dr. Jackson knew of Ms. Embleton's complaint when he removed her from the substitute teacher list. The court disagrees. Ms. Embleton sent her complaint to Mrs. Roth on December 19, 2018, at 11:47 A.M. and Mrs. Roth reported the complaint to Dr. Jackson either that same day or the next day, December 20. Ms. Baines sent an email notifying school administrators that Ms. Embleton had been removed from the substitute teacher list on December 20 at 12:38 P.M. Mrs. Roth and Dr. Jackson testified that they couldn't remember whether Mrs. Roth told Dr. Jackson about the complaint before or after the email was sent. Looking at the evidence in the light most favorable to Ms. Embleton, it's

reasonable to infer that Mrs. Roth told Dr. Jackson about Ms. Embleton's complaint before the email was sent. As the nonmovant, Ms. Embleton is entitled to that inference. A jury might find otherwise when weighing the evidence, but a summary judgment court can't weigh the evidence.

The School next argues that the suspect timing of Mrs. Roth's report to Dr. Jackson and Embleton's removal from the substitute teacher list isn't sufficient to establish a causal link, and that Dr. Jackson had a non-discriminatory reason for the removal based on Dr. Maple's report. "For an inference of causation to be drawn solely on the basis of a suspicious-timing argument, [the law] typically allow[s] no more than a few days to elapse between the protected activity and the adverse action." Khungar v. Access Cmty. Health Network, 985 F.3d at 578 (quoting Kidwell v. Eisenhauer, 679 F.3d 957, 966 (7th Cir. 2012)). Only 25 hours or so elapsed between Ms. Ebleton's message to Mrs. Roth and Ms. Embleton's removal from the substitute teacher list. So the two events were close enough in time for a causal link to be possible as a matter of law. Moreover, nine days had passed since Dr. Jackson received Dr. Maple's report. Viewing the evidence in the light most favorable to Ms. Embleton, a reasonable jury could find that it was Ms. Embleton's complaint to Mrs. Roth that caused Dr. Jackson to remove Ms. Embleton from the substitute teacher list, not Dr. Maple's report.

\* \* \*

The school isn't entitled to summary judgment on Ms. Embleton's Title VII retaliation claim.

13

IV. Conclusion

For the foregoing reasons, the court DENIES the School's motion for summary judgment. [Doc. No. 49].

SO ORDERED.

ENTERED: <u>March 29, 2022</u>

<u>/s/ Robert L. Miller, Jr.</u>
Judge, United States District Court

Distribution: All electronically registered counsel of record